IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER WITCHER, #261-709,  *
    *
    *Petitioner*,  *
    *
    v.  *    Civil Case No. RWT-13-3385
    *
FRANK BISHOP, et al.,  *
    *
    *Respondents*.  *

## MEMORANDUM OPINION

Christopher Witcher ("Witcher") filed a Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 30, 2013,[1] challenging his 1996 convictions in the Circuit Court for Prince George's County. ECF No. 1. He presents the following claims:

1. The State failed to disclose "*Brady*"[2] material;

2. The circuit court erred in denying post-conviction relief by not recognizing the materiality of suppressed exculpatory evidence; and

3. The State violated the Due Process clauses of the Fifth and Fourteenth Amendments.

ECF No. 1, at 4.

Upon review of the pleadings, the Court finds no need for an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2013); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the reasons that follow, the Petition will be deemed timely but nonetheless denied on the merits and dismissed. A certificate of appealability shall not issue.

---

[1] The Petition was signed on October 30, 2013, and presumably was turned over to prison officials the same day. Under the "mailbox rule," the Petition is deemed filed on that date. *See Houston v. Lack*, 487 U.S. 266 (1988); *Lewis v. Richmond City Police Department*, 947 F.2d 733, 734–35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919–20 (D. Md. 1998). The Court received the Petition on November 13, 2013.

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

## Background and Procedural History

The Court of Special Appeals of Maryland, in an unreported opinion affirming Witcher's convictions, set forth the following summary of the evidence produced at Witcher's trial:

> On the morning of November 27, 1995, fourteen-year-old Tatiana Brennen, the victim, was stabbed 65 times by a knife in a wooded area behind Suitland High School in Prince George's County. She died as a result of the wounds. Vorthynor Sovann and Shawntee Perry, tenth grade classmates of the victim, admitting to stabbing her. The State presented evidence that Witcher was the leader of a gang in which the victim, Sovann, and Perry were associated and that he had ordered the victim killed. The evidence, viewed in the light most favorable to the State, established the following:
>
> The Washington, D.C. suburban branch of a gang called "The Bloods" was composed of three different but friendly sects, the Insane Vice Lords (IVL), Piru, and Blood Stone Villians [sic]. Witcher was the "OG – Original Gangster" or leader of the IVL sect; and Arthur Allen was the O.G. of the Piru sect. Perry and the victim were members of the IVL sect while Sovann was a member of the Piru sect. The gang issued rules on what members could say and to whom, what they were to wear, and how to act under certain circumstances. If anyone violated the rules, they were given a "V." A "V" meant that the person would be beaten or killed.
>
> Sovann was initiated into the gang sometime in October, 1995. In November, Witcher held two meetings at his home for members of both the IVL and Piru sects. At the first meeting, he explained that although both he and Allen were O.G.'s, his status was superior to Allen's. He also told those present that "whoever had the O.G. called on them had to be killed[.]"
>
> A couple of weeks later Witcher held a second meeting at his home. Again members of both IVL and Piru sects were present. At that meeting, Witcher told the members that if they failed to carry out his orders, he would have them killed. He also told the members that the victim was getting as "V" for telling a man named Moe that the gang was going to kill him. The persons at the meeting proceeded to beat the victim.
>
> Several days later on the morning of a school day, Perry met Sovann at his school locker and told him that Witcher had ordered them to kill the victim. They then lured the victim to the woods behind the school by telling her that she was getting a tatoo [sic] and that they would give her four guns. They told the victim to sit on a chair. Sovann and Perry's testimony diverged at this point with each casting blame on the other for the stab wounds. Nonetheless, after the victim was stabbed 65 times, the two placed debris on her body and left her in the woods.

> The two then changed their clothes, washed up at a nearby store, and returned to school.
>
> Later that day Sovann telephoned Witcher. During their telephone conversation, Witcher told Sovann that he had ordered the killing and that Sovann should burn the clothes he wore to hide evidence of the murder. Sovann testified that he participated in the killing because he thought Witcher would kill him or his family if he did not do as he was ordered. Prior to Witcher's trial, Sovann was tried and convicted of the victim's murder but had not yet been sentenced.

*Witcher v. State*, No. 1172, at *1–*3 (Md. App. Sept. 10, 1999).

On July 18, 1996, after a jury trial in Prince George's County, Witcher was convicted of first degree murder, conspiracy to commit murder, and solicitation of Perry to commit murder. ECF No. 8-1, at 6. He was acquitted of solicitation of Sovann to commit murder. *Id.* Witcher was sentenced on January 3, 1997 to imprisonment for life without the possibility of parole. *Id.* at 7. On August 3, 1998, he filed a belated notice of appeal,[3] *id.* at 10, and the Court of Special Appeals affirmed the judgment on September 10, 1999, *Witcher*, No. 1172, at *1. On October 15, 1999, Witcher filed a petition for writ of certiorari in the Court of Appeals of Maryland, which was subsequently denied. ECF No. 8-1, at 11. Witcher did not file for certiorari in the United States Supreme Court. Therefore, the judgment became final for direct appeal purposes on March 20, 2000, when the time for seeking further review in the Supreme Court expired. *See* Sup. Ct. Rule 13 (requiring that petition for writ of certiorari be filed within ninety days of the date of judgment from which review is sought).

Witcher filed a pro se petition for post-conviction review in the Circuit Court on July 19, 2000. ECF No, 8-1, at 11. On April 17, 2001, that petition was withdrawn without prejudice. *Id.* at 13. On December 29, 2006, Witcher filed a counseled petition in the Circuit

---

[3] Witcher obtained permission to file a belated appeal as a result of a petition for post-conviction relief filed on April 20, 1998, limited to the issue of the belated notice of appeal. ECF No. 8-1, at 9–10. His request was granted, without prejudice to filing another post-conviction application after the appeal was final. *Id.* at 10; *see also* ECF No. 15-2, at 4–5.

3

Court, amended on February 16, 2010. *Id.* Following hearings January 20, 2011 and May 19, 2011, the circuit court denied post-conviction relief on January 10, 2012. *Id.* at 14–16. On January 25, 2012, Witcher filed a request for en banc review. *Id.* at 16. The appellate court affirmed the circuit court's decision in an order filed on April 25, 2013, thereby rendering Witcher's post-conviction proceedings final. *Id.* at 16–17; *see also* Md. R. Civ. P. 2-551(h).

As previously noted, Witcher filed the instant Petition for writ of habeas corpus in this Court on October 30, 2013. Respondents filed their answer on March 3, 2014. ECF No. 8. Because it appeared that the Petition was untimely, on November 7, 2014, the Court ordered Witcher to file a show cause response as to why his § 2254 Petition should not be dismissed as time-barred. ECF No. 10. Witcher filed his response on December 1, 2014, arguing that the Petition was timely pursuant to 28 U.S.C. § 2244(d). ECF No. 11. The Court subsequently directed Respondents to file additional documents, as the pleadings and exhibits did not indicate when Witcher presented his current claims to the circuit court on post-conviction review. ECF No. 13. Respondents filed the additional documents on May 27, 2015. ECF No. 15.

### Timeliness of Petition

The Court must first address the timeliness of the Petition. A one-year statute of limitations applies to habeas petitions in non-capital cases for a person convicted in a state court. 28 U.S.C. § 2244(d)(1) (2013). This one-year period is, however, tolled while properly filed post-conviction proceedings are pending and may otherwise be equitably tolled. *See* 28 U.S.C. § 2244(d)(2); *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). In this case, Witcher has neither asserted, nor do the pleadings suggest, any circumstances that would justify equitable tolling. Rather, Witcher asks that timeliness be considered pursuant to § 2244(d)(1)(D), under which the statute of limitations begins to run on "the date on which the factual predicate of the

claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see also* ECF No. 11, at 2.

Witcher states that "in researching my post conviction I Found My 'Brady' Issues, State failed to Disclose 'two statements.'" ECF No. 11, at 2. Similarly, counsel states that in reviewing Witcher's police file, he uncovered two police department inter-office memoranda which were not disclosed to trial counsel or otherwise brought to the jury's attention during Witcher's trial. ECF No. 15-2, at 7–8. In response to the Court's order to file supplemental material, Respondents submitted a copy of Witcher's July 19, 2000, post-conviction petition; a copy of Witcher's February 16, 2010, amended post-conviction petition; and a transcript of the post-conviction hearing. ECF No. 15. They were unable to obtain a copy of the December 2006 post-conviction application, despite specific request to the Clerk of the Prince George's County Circuit Court. *Id.*

The July 2000 pro se post-conviction application, ECF No. 15-1, did not include any *Brady* claims; those claims were raised in the February 2010 amended post-conviction application, ECF No. 15-2. However, whether those claims were raised in the previous December 2006 petition cannot be determined. Thus, the Court is only slightly better off than it was before it issued its Order directing Respondents to file the documents noted above.

The circuit court's January 10, 2012 Opinion and Order of the Court denying Witcher's petition for post-conviction relief, however, provides some insight regarding the 2006 post-conviction petition, although not specifically when the factual predicate of Witcher's claims was discovered. *See* 28 U.S.C. § 2244 (d)(1)(D). The court stated in a footnote that:

Witcher's two allegations of error, in the original, are:

(1) Mr. Witcher's rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, were twice violated when the State did not disclose two separate

> inter-office police memoranda that would have been very helpful to the defense. One memoranda contained evidence tending to prove that a key state's witness received a benefit in exchange for his testimony. The other contained valuable impeachment evidence that a key State's witness had previously told the police that someone other than Mr. Witcher had ordered the killing.

ECF No. 8-11, at 1 n.1.[4] By "in the original," presumably the circuit court was referring to the 2006 application. Therefore, it appears likely—but not certain—that Witcher's *Brady* claims were presented in his December 2006 state post-conviction petition, which was still pending when the 2010 amendment was filed. If true, then Witcher's *Brady* claims were "found" or "discovered" sometime between the filing (and voluntary withdrawal) of the 2000 post-conviction petition and the filing of the 2006 application.

Based on the foregoing, the Court cannot determine with certainty the timeliness of Witcher's petition. Therefore, the Court will assume—in Witcher's favor—that the claims were unearthed within a year prior to December 29, 2006, rendering the Petition timely, and the Court will address the merits of Witcher's claims. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**Standard of Review**

The federal habeas statute, 28 U.S.C. § 2254, as amended, sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to

---

[4] Petitioner's second alleged error, an ineffective assistance of counsel claim, is not relevant to the issues at hand.

be."). Petitioner carries the burden of proof to meet this standard. *See Pinholster*, 131 S. Ct. at 1398.

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2013).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis of § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if [r]easonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. (second alteration in original) (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

## Analysis of Petitioner's Claims

Witcher presents three related claims for the Court's review: (1) the State failed to disclose "*Brady*" material; (2) the circuit court erred in denying post-conviction relief by not recognizing the materiality of suppressed exculpatory evidence; and (3) the State violated the due process clauses of the Fifth and Fourteenth Amendments. ECF No. 1, at 6. Because the claims are all based on an alleged "*Brady*" violation, they are addressed together.

In *Brady v. Maryland*, defense counsel had asked the prosecution to allow him to examine statements made by Brady's accomplice. 373 U.S. at 84. Several statements were shown to defense counsel, but one, in which the accomplice admitted to committing the homicide of which he and Brady were accused, was withheld and discovered by the defense only after Brady's trial had ended and his conviction had been affirmed. *Id.* The Supreme Court held

8

that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

> We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment as well as exculpatory evidence. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Moreover, the rule encompasses evidence known only to police investigators and not to the prosecutor.

*Strickler v. Greene*, 527 U.S. 263, 280–81 (1999) (internal citations and quotation marks omitted).

There are three fundamental components to a *Brady* claim: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State"; and (3) the evidence must be material to the defense, that is, "prejudice must . . . ensue[]." *Walker v. Kelly*, No. 08-11, 2009 WL 4877761, at *8 (4th Cir. Dec. 16, 2009) (quoting *Strickler*, 527 U.S. at 281–82) (alterations in original).

In the instant case, the documents at issue consisted of two inter-departmental memoranda from within the Prince George's County Police Department. The first, dated February 22, 1996, was entitled "Update on Tatia Brennan Murder Investigation and Prosecution." ECF No. 8-11, at 6. The second,[5] dated January 17, 1996, was entitled "Interview with Sovann Vorthynar 'Bingo.'" *Id.* Although the circuit court addressed the February 22, 1996, memorandum,[6] Witcher does not raise it in his Petition before this Court.

---

[5] The Court follows the order, although not chronological, in which the circuit court addressed the documents in its Opinion and Order of Court denying Witcher's post-conviction application. ECF No. 8-11.

[6] The circuit court found that the February 22, 1996, memorandum had been suppressed, but was not favorable to Witcher. ECF No. 8-11, at 12. The court did not evaluate the materiality of that memorandum.

9

ECF No. 1, at 6. The Court, then, need not address the February 1996 memorandum and turns to the January memorandum regarding an interview with Sovann.

> As described by the circuit court, the January memorandum read as follows:
>
> On January 17, 1996 at 1145 hours this writer [the investigating detective in the Tatia Brennan case], and [another detective] interviewed the subject [Sovann] at DOC. He was not advised of his rights, and was asked general gang questions only. During the interview the subject mentioned the homicide of Tatia Brennan. He stated he was ordered to "kill" Tatia by his OG, Arthur Allen. He struck Tatia with the sink, so when she was stabbed she did not suffer, as she would be unconscious. He was not questioned about the pending homicide case. The statements were made without solicitation, and he was immediately advised by this writer to refrain from discussing the case. He further stated he initially stabbed her in the side of her body, let the knife fall, and he let her run. She ran to "Lover" [Perry] instead of away from the scene, and "Lover" continued to stab her. He again was advised to refrain from discussing the case. NFD.

ECF No. 8-11, at 6–7 (alterations in original). Witcher argued to the circuit court that "Sovann's January 17, 1996 statement to police would have 'aided in destroying Sovann's credibility before the jury because they would have learned of yet another inconsistent statement he had made.'" *Id.* at 10. According to Witcher, admission of this statement would have "bolstered" the defense's theory that Allen ordered the killing, not Witcher. *Id.* Thus, he argued that the document was "exculpatory in nature and would have materially altered the jury's finding of guilt against him." *Id.* at 5; *see also* ECF No. 15-3, at 10.

The circuit court first found there was no question that the January memorandum was available and should have been disclosed. ECF No. 8-15, at 11–12; *see also* ECF No. 15-4, at 30–31 (concession by assistant state's attorney at Witcher's post-conviction hearing that January memorandum should have been disclosed).

Next, the circuit court addressed whether the substance of the January memorandum was exculpatory "by tending to negate or mitigate the guilt of Witcher." ECF No. 8-11, at 12. The

court determined that the information was "clearly exculpatory" within the ambit of *Brady* "as it had the potential to exonerate Witcher." *Id*.

Third, the circuit court turned to the materiality of the January memorandum: "when evaluated in the context of the entire record, does it create a reasonable doubt that did not otherwise exist." *Id.* at 13. On the other hand, "[i]f there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* (quoting *Agurs*, 427 U.S. 97, 114 (1976)) (italics omitted). The court determined that "[t]he failure of the State to disclose this document did not deprive Witcher of his constitutional right to a fair trial as he was able to confront Sovann on cross-examination and to question him on who ordered Sovann to kill Ms. Brennan." *Id.* at 15. The circuit court quoted from defense counsel's cross-examination of Sovann regarding another statement Sovann had made to the police in which he stated that Shawnte Perry told him Allen made the call to kill Ms. Brennan. *Id.* The court found this testimony "to be dispositive of this matter." *Id.* The Opinion and Order of Court states:

> In choosing to find Witcher guilty of first degree murder of Tatia Brennan, conspiracy to commit murder, and the solicitation of Shawnte Perry to commit murder, and not guilty of the solicitation of Youthynor [sic] Sovann to murder, the jury acted in its role as the fact-finder to resolve the ultimate facts. Through its verdicts, the jury signaled that it did review the conflicting evidence in respect to Witcher's involvement with Sovann and found that he did not solicit Sovann. A clear inference, consequently, is that the jury found credible Witcher's assertion that it was not beyond a reasonable doubt that Witcher did not give Sovann the command to kill Brennan. The entry of a document that may have cast additional doubt into the minds of the jury in their finding of Witcher not guilty of the solicitation of Sovann would have been superfluous.
> . . . .
> Had the January 17, 1996 memorandum been properly disclosed to Witcher, and had it been used at trial to cross-examine Sovann, it is difficult to see how the presence of this information would have materially altered the judgment of the jury. Witcher's trial counsel was well able to cross-examine Sovann about the discrepancies in his testimony and his bias. Most critically, Witcher's trial counsel elicited from Sovann the conflicting evidence that Witcher

11

and Allen both appeared to have ordered Sovann to kill Brennan. Sovann was thus impeached at trial by his prior inconsistent statements. Additionally, Sovann admitted that he was facing sentencing on his own first degree murder conviction and thus may have had a motive to give testimony favorable to the State. The non-disclosed January 17, 1996 memorandum would have done little to further tarnish Sovann's credibility with the jury. Rather, the January 17, 1996 memorandum would have been cumulative evidence. Indeed, Witcher, in his petition, notes that Sovann's statement in the January 17, 1996 memorandum would have resulted in the jury learning "of yet another inconsistent statement."

The presence of the January 17, 1996 memorandum would not have undermined confidence to a reasonable probability in any of the jury's convictions of Witcher for the first degree murder charge, the conspiracy to commit murder or the solicitation of Perry to commit murder. As such, we find that the January 17, 1996 memorandum was not material.

*Id.* at 17–18.

This Court cannot say that the circuit court's decision on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state post-conviction court discussed at length the standard by which materiality must be judged, as articulated by the United States Supreme Court in *Brady v. Maryland* and its progeny and as interpreted by the Maryland appellate courts which, in turn, relied upon applicable Supreme Court cases. The circuit court then correctly applied that standard. Its application of "clearly established Federal law" was neither incorrect nor unreasonable. *Id.*

Moreover, it cannot be said that the circuit court unreasonably determined the facts "in light of the evidence presented in the State court proceeding." *Id.* Over a two-day period, the court conducted an evidentiary hearing and heard argument. ECF Nos. 15-3, 15-4. This Court presumes that the state court's determination of factual issues is correct. 28 U.S.C. § 2254(e)(1).

Simply put, Witcher has not met his "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see also Sharpe*, 593 F.3d at 378.

The circuit court's determination that the January memorandum was not material to the jury's guilty verdict is presumptively correct, and Witcher has not overcome that presumption. Nor has he established that the circuit court unreasonably applied existing federal law to the facts of Witcher's case. Accordingly, this Court will not overturn the state court's findings that, absent materiality, there was no *Brady* violation.[7] Further, it follows that if there was no *Brady* violation, then there was no due process violation. Therefore, Witcher is not entitled to relief pursuant to 28 U.S.C. § 2254.

## Certificate of Appealability

Witcher may not appeal this Court's denial of relief under § 2254 unless it issues a certificate of appealability. *See* 28 U.S.C. § 2253(c) (2012); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). A certificate of appealability will not issue without a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 337. Under this standard, Witcher must show that "jurists of reason could have resolved this claim differently." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (citing *Miller-El*, 537 U.S. at 336). This Court has assessed the claims in Witcher's petition and found them deficient. No reasonable jurist could find merit in any of his claims, and thus no certificate of appealability shall issue.

---

[7] There is no question that the State did not turn over *Brady* evidence, as the circuit court found. However, that single issue is not dispositive of this Petition.

## Conclusion

For the reasons stated herein, Witcher's petition for writ of habeas corpus is DENIED and DISMISSED and a certificate of appealability shall not issue. A separate order follows.

November 16, 2015                                              /s/
Date                                                      ROGER W. TITUS
                                                          UNITED STATES DISTRICT JUDGE